# United States Court of Appeals for the Federal Circuit

---

**ADIDAS AG,**
*Appellant*

**v.**

**NIKE, INC.,**
*Appellee*

---

2019-1787, 2019-1788

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2016-00921, IPR2016-00922.

---

Decided: June 25, 2020

---

MITCHELL G. STOCKWELL, Kilpatrick Townsend & Stockton LLP, Atlanta, GA, for appellant. Also represented by VAIBHAV P. KADABA, MICHAEL T. MORLOCK, TIFFANY L. WILLIAMS.

CHRISTOPHER J. RENK, Banner & Witcoff, Ltd., Chicago, IL, for appellee. Also represented by KEVIN DAM, MICHAEL JOSEPH HARRIS.

---

Before MOORE, TARANTO, and CHEN, *Circuit Judges.*

MOORE, *Circuit Judge*.

Nike, Inc. owns U.S. Patent Nos. 7,814,598 and 8,266,749, which share a specification and are directed to methods of manufacturing an article of footwear with a textile upper. *See* '598 patent at 1:18–21. Adidas AG petitioned for *inter partes* review of claims 1–13 of the '598 patent and claims 1–9, 11–19 and 21 of the '749 patent. The Board held that Adidas had not demonstrated that the challenged claims are unpatentable as obvious. Adidas appeals. Because the Board did not err in its obviousness analysis and substantial evidence supports its underlying factual findings, we affirm.

## I. Standing

"Although we have jurisdiction to review final decisions of the Board under 28 U.S.C. § 1295(a)(4)(A), an appellant must meet 'the irreducible constitutional minimum of standing.'" *Amerigen Pharm. Ltd. v. UCB Pharma GmBH*, 913 F.3d 1076, 1082 (Fed. Cir. 2019) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). As the party seeking judicial review, Adidas must show that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct [], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Nike contends that Adidas cannot establish an "injury in fact," and therefore lacks standing to bring this appeal, because Nike "has not sued or threatened to sue Adidas for infringement of either the '598 or the '749 patent." Appellant's Br. 20. We do not agree.

An appellant need not face "a specific threat of infringement litigation by the patentee" to establish the requisite injury in an appeal from a final written decision in an *inter partes* review. *E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1004 (Fed. Cir. 2018). Instead, "it is generally sufficient for the appellant to show that it has engaged in, is engaging in, or will likely engage in activity

that would give rise to a possible infringement suit." *Grit Energy Sols., LLC v. Oren Techs., LLC*, 957 F.3d 1309, 1319 (Fed. Cir. 2020). In *DuPont*, we held that the appellant had standing because it had concrete plans to make a potentially infringing product, including actually completing the necessary production plant, and thus there was a substantial risk of future infringement. *DuPont*, 904 F.3d at 1005. We determined that the patent owner's refusal to grant appellant a covenant not to sue further confirmed that appellant's risk of injury was not "conjectural" or "hypothetical." *Id.*

As in *DuPont*, Adidas and Nike are direct competitors. J.A. 2584. In 2012, Nike accused Adidas, based on Adidas' introduction of its "Primeknit" products, of infringing one of Nike's "Flyknit" patents[1]—specifically, a German patent—and expressed its intent "to protect [Nike's] rights globally in the future against further infringing acts" by Adidas. J.A. 2585–86; 2591–2613. Adidas markets shoes that contain Primeknit-based uppers in the United States. J.A. 2587. Although Nike has not yet accused Adidas of infringing the '598 or '749 patents, Nike has asserted the '749 patent against a third-party product similar to Adidas' footwear. J.A. 2587–90, 2678–93. In 2019, Nike told this court that "five months after [it] announced FLYKNIT, [A]didas announced a *similar product* of its own that it called 'Primeknit.'" J.A. 2587 (emphasis added). Moreover, Nike has refused to grant Adidas a covenant not to sue, confirming that Adidas' risk of infringement is concrete and substantial. *See DuPont*, 904 F.3d at 1005. We therefore conclude that Adidas has Article III standing to bring this appeal.

---

[1]     Nike has a portfolio of "more than 300 issued utility patents," including the '749 patent, directed to its Flyknit technology. J.A. 2652.

## II. Obviousness

The challenged claims recite a method of "mechanically-manipulating a yarn with a circular knitting machine . . . to form a cylindrical textile structure." '598 patent at 3:41–46. The claimed method involves removing a textile element from the textile structure and incorporating it into an upper of the article of footwear. *Id.* at 3:41–46. Claims 4 and 11 of the '598 patent and claims 11 and 21 of the '749 patent (collectively, the Unitary Construction Claims) require that the textile element is a single material element wherein portions of the textile element have different textures and "are not joined together by seams or other connections." *Id.* at 5:40–43, 6:41–50. The other challenged claims (collectively, the Base Claims) are not so limited.

Claim 1 of the '598 patent is illustrative of the Base Claims:

> 1. A method of manufacturing an article of footwear, the method comprising steps of:
>
> mechanically-manipulating a yarn with a circular knitting machine to form a cylindrical textile structure;
>
> removing at least one textile element from the textile structure;
>
> incorporating the textile element into an upper of the article of footwear.

'598 patent at Claim 1. Claim 4 of the '598 patent is illustrative of the Unitary Construction Claims:

> 4. The method recited in claim 1, wherein the step of mechanically manipulating includes forming the textile element to include a first area and a second area with a unitary construction, the first area being formed of a first stitch configuration, and the second area being formed of a second stitch

configuration that is different from the first stitch
configuration to impart varying textures to a sur-
face of the textile element.

'598 patent at Claim 4.

Adidas challenged the claims as obvious in view of:
(1) the combination of U.S. Patent Nos. 3,985,003 (Reed)
and 5,345,638 (Nishida) (Ground 1) and (2) the combina-
tion of Nishida and U.S. Patent Nos. 4,038,840 (Castello)
and 6,330,814 (Fujiwara) (Ground 2).[2] The Board held that
Adidas had not demonstrated that the challenged claims
are unpatentable as obvious under either ground. We re-
view the Board's legal determinations de novo and its fac-
tual findings for substantial evidence. *In re Van Os*, 844
F.3d 1359, 1360 (Fed. Cir. 2017). "Obviousness is a ques-
tion of law based on underlying facts." *Arctic Cat Inc. v.
Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1358
(Fed. Cir. 2017).

## A. Ground 1

The Board held that Adidas had not established the un-
patentability of the challenged claims under Ground 1 be-
cause Adidas had not demonstrated that a person of
ordinary skill in the art would have been motivated to com-
bine Reed and Nishida. *See* J.A. 91, 214. In particular, the
Board noted that neither Adidas nor its declarant, Mr.
Holden, "addresses the fact that each of the relied upon

---

[2] The Board initially declined to institute review on
Ground 2 because it was insufficiently particular.
J.A. 389–91, 414–16. The Board issued final written deci-
sions on Ground 1 and Adidas appealed. We remanded in
view of *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348 (2018),
for the Board to "issue a decision as to all grounds raised
in Adidas' petitions." *See* A*didas AG v. Nike, Inc.*, 894 F.3d
1256, 1257 (Fed. Cir. 2018). This appeal concerns the
Board's final written decisions after remand.

embodiments of Reed teaches pre-seaming" whereas Nishida involves seaming the textile element after it has been cut from the textile structure. J.A. 89, 210. With respect to the Unitary Construction Claims, the Board further found that Adidas failed to show a motivation to combine Reed and Nishida because the "unitary construction" limitation excludes seams of the type taught in Reed. J.A. 90, 211. The Board therefore determined that combining Reed with Nishida would "require the alteration of the principles of operation of Reed or would render Reed inoperable for its intended purpose." J.A. 93–95.

Adidas contends that substantial evidence does not support the Board's motivation to combine findings. It argues that Reed and Nishida are entirely compatible because they both discuss knitting in multiple layers and that a skilled artisan would be motivated to combine the references to reduce waste. With respect to the Base Claims, Adidas argues that the pre-seaming differences between Reed and Nishida are irrelevant in view of the Board's construction of the Base Claims as "encompass[ing] methods related to both pre-seamed and unseamed garments and garment sections." *See* J.A. 88, 210. It argues that in view of the Board's construction, all that was necessary was evidence of a suggestion to extend the teachings of Reed to produce a textile element for incorporation into a footwear upper. We do not agree.

The obviousness inquiry does not merely ask whether a skilled artisan could combine the references, but instead asks whether "they would have been motivated to do so." *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1352 (Fed. Cir. 2014). Fundamental differences between the references are central to this motivation to combine inquiry. Thus, while the Board construed the Base Claims as encompassing pre-seamed and unseamed garments and garment sections, the Board properly considered the fundamental differences in the seaming techniques of Reed and Nishida. Rather than address these differences,

Adidas merely cites to "Reed's other objects" concerning cost reduction and garment production, which the Board already considered and rejected. *See, e.g.*, J.A. 87–88. In view of the undisputed evidence of the pre-seaming differences between Reed and Nishida, we conclude that substantial evidence supports the Board's motivation to combine findings with respect to the Base Claims. Because the Unitary Construction Claims depend from the independent Base Claims, we conclude that substantial evidence supports its motivation to combine findings with respect to the Unitary Construction Claims.

## B. Ground 2

The Board determined that Adidas had also not established the unpatentability of the challenged claims under Ground 2 in part because Adidas failed to identify which reference or combination of references it was relying on to disclose each limitation of the challenged claims. J.A. 99, 221. The Board further found that Adidas failed to establish that a person of ordinary skill in the art would have been motivated to combine "the teachings of Nishida and Castello regarding unseamed garment portions with the teachings of Fujiwara regarding pre-seamed garments." J.A. 112, 236. In view of the different seaming techniques, the Board found that modifying Castello in view of Fujiwara would "change the principles under which Castello operates." J.A. 113, 236.

Adidas contends that substantial evidence does not support the Board's motivation to combine findings. It argues that a skilled artisan would have been motivated to "modify Castello's method to include additional features described by Fujiwara and Nishida to reduce cost and waste and to extend well-known knitting techniques and machinery to produc[e] uppers." J.A. 1299 ¶ 206. As with Ground 1, Adidas contends that "preseamed versus unseamed garment portions have no bearing" on the proposed

motivations to combine.  Appellant's Br. 60.  Adidas' contentions are unavailing.

As the Board found, Adidas relies upon disclosures of Castello that do not teach pre-seaming.  In contrast, "the intended purpose of Fujiwara's methods is to produce pre-seamed, substantially finished garments."  J.A. 112; J.A. 1370 at 1:53–55, 1371 at 3:14–18 (stating that the goal of Fujiwara's invention is to reduce the need for stitching).  As explained with respect to Ground 1, the Board properly considered these fundamental differences in seaming techniques as part of its motivation to combine inquiry.  Because Adidas failed to reconcile these differences, we conclude that the Board's motivation to combine findings are supported by substantial evidence.[3]

## CONCLUSION

We have considered the parties' remaining arguments and do not find them persuasive.  Because the Board did not err in its obviousness analysis and substantial evidence supports its underlying factual findings, we affirm.

**AFFIRMED**

---

[3]    Because we conclude that the Board's motivation to combine findings are supported by substantial evidence, we do not reach the Board's alternative determination regarding the particularity of Ground 2.